# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

**MUSIC L.A.A., INC.**, d/b/a LAA MUSIC, a New York corporation,

and

**ZAC HILLER**, an individual,

Plaintiffs,

v.

**THE WALT DISNEY COMPANY**, a Delaware corporation,

and

**DOES 1–10**,

Defendants.

Case No. ____________________

Judge ______________________

Magistrate Judge ____________

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

(17 U.S.C. §§ 101 *et seq.*)

**JURY TRIAL DEMANDED**

Plaintiffs Music L.A.A., Inc., d/b/a LAA Music, and Zac Hiller, through undersigned counsel, for their Complaint against Defendants The Walt Disney Company and Does 1–10, allege as follows:

## NATURE OF THE ACTION

1. For a hundred years, The Walt Disney Company has taught the world one rule: if you want to use what someone else created, you ask permission and you pay. Disney enforces that rule against everyone else. This case is about Disney exempting itself from it.

2. Through four of its businesses — ESPN, Hulu, Disney Parks, and FX — Disney put Plaintiffs' music into at least seven promotional videos aimed at

audiences in the millions. One Hulu promotion alone drew roughly 481,700 likes and 17,500 shares. Disney never asked for a license. Disney never paid a dollar.

3. Plaintiffs gave Disney written notice of every use, starting in August 2026. For two months, Disney's legal department answered with "under review." When pressed, it blamed an unnamed "Dutch company" it has never identified. It never produced a license, because none exists. Then all seven videos — including the ones Disney insisted were posted by others — came down.

4. Taking a video down after getting caught does not undo the infringement. It proves two things: Disney knew the videos used music it had no right to use, and Disney controlled videos that ran under other people's names.

5. Disney negotiates synchronization licenses every day. Upon information and belief, it employs people whose job is to clear music. Its infringement here was not the oversight of a company too large to notice. It was a business decision: use the music now, take the promotional benefit, and make the rights holder chase it later. Plaintiffs bring this action under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, to hold Disney accountable for every unlicensed use, to recover the license fees it never paid and the profits it took, and to stop it from happening again.

## PARTIES

6. Plaintiff Music L.A.A., Inc. ("LAA") is a New York corporation with its principal place of business at 429 Atlantic Avenue, Freeport, New York 11520. LAA does business as LAA Music and appears in Copyright Office records as "LAA Music" and "Music LAA." LAA owns, administers, licenses, and enforces rights in musical compositions and sound recordings.

7. Plaintiff Zac Hiller is an individual and the owner of LAA. Mr. Hiller is the registered copyright claimant of the sound recording "Take it Off 'Lights Off' Beat." LAA and Mr. Hiller are together "Plaintiffs."

8. Defendant The Walt Disney Company ("Disney") is a Delaware corporation with its principal place of business in Burbank, California. Disney is one of the largest media and entertainment companies in the world. Disney operates, owns, and controls the businesses through which the infringement in this case occurred: ESPN; Hulu; Disney's domestic theme parks and resorts, including the @DisneyParks brand and its creator programs ("Disney Parks"); and FX, including the FX series *The Drop*. Disney maintains substantial operations in New York, New York, including the corporate legal department that received and handled Plaintiffs' notices of infringement.

9. Defendants Does 1–10 are persons and entities, presently unknown, who commissioned, produced, posted, approved, or distributed the infringing videos

described below — including the company Disney has described only as a "Dutch company" responsible for posting ESPN's videos, any agency or vendor that produced the videos, and any Disney subsidiary or affiliate through which Disney acted. Plaintiffs will amend to name them once they are identified. Disney alone knows who they are.

10. At all relevant times, every person and entity that produced or posted the infringing videos acted as Disney's agent, at Disney's direction, and for Disney's benefit. Disney had the right and ability to supervise the conduct of each, and a direct financial interest in it.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. §§ 101 et seq.

12. This Court has specific personal jurisdiction over Disney under Michigan's long-arm statute, Mich. Comp. Laws § 600.715(1) and (2), and the Due Process Clause of the Fourteenth Amendment. Disney continuously and deliberately transacts business in Michigan and within this District. Through ESPN, Disney televises and streams sports into every Michigan market — including games involving Michigan's college and professional teams — and sells subscriptions directly to Michigan residents. Through Hulu, Disney sells streaming

subscriptions directly to Michigan residents online. Through Disney Parks, Disney markets vacations and park tickets to Michigan residents. Through FX, Disney distributes its series, including The Drop, to Michigan audiences.

13. The infringing videos were not idle posts. They were Disney advertising, built to sell exactly those subscriptions, programs, and park trips to audiences that include Michigan residents, including residents within this District. Each video was distributed to and viewed by Michigan residents, and Disney sought to convert that Michigan audience into Michigan revenue. Plaintiffs' claims therefore "arise out of or relate to" Disney's Michigan contacts. Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 359–62 (2021). When a company "serves a market for a product in a State" and that product causes injury there, the State's courts may hear the claim. Id. at 363.

14. Exercising jurisdiction here is fair and reasonable. Disney is among the largest media companies in the world, litigates routinely in federal courts across the country — including in this District — and suffers no meaningful burden defending in Michigan.

15. Venue is proper in this District under 28 U.S.C. § 1400(a) because Disney is subject to personal jurisdiction here and therefore "may be found" in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events

giving rise to the claims occurred here, including the distribution and viewing of the infringing advertisements within this District.

## THE COPYRIGHTED WORKS

16. Plaintiffs own the copyrights in the following works (the "Works"), each registered with the U.S. Copyright Office:

| Work | Reg. No. | Type | Effective | Claimant | Ex. |
|---|---|---|---|---|---|
| "New Opp (beat)" | SR 1-081-666 | Sound recording | Sept. 24, 2026 | LAA Music (by written agreement) | A |
| "Gang Gang" | PA 2-604-411 | Musical work | Sept. 15, 2026 | Music LAA | B |
| "Take it Off 'Lights Off' Beat" | SR 1-075-539 | Sound recording | Apr. 14, 2026 | Zac Hiller (by written agreement) | C |

17. **"New Opp."** Producer Souleyman Ble Gueu, professionally known as Soumadethis, created the original production of the beat later used in the song "New Opp," released in 2022 with vocals by the recording artist Sha Gz. The beat remains publicly available on Souleyman's own YouTube channel.

18. By written Ownership Agreement dated June 7, 2025, Souleyman assigned to LAA a fifty percent (50%) ownership interest in his rights in the beat, including synchronization rights (Exhibit D). Souleyman has confirmed his authorship, the assignment, and his disaffirmance of an earlier production agreement

he signed as a minor, under penalty of perjury (Exhibit E; *see also* Exhibit D). As a co-owner, LAA may sue to enforce the copyright on its own. 17 U.S.C. § 501(b).

19. Registration No. SR 1-081-666 covers Souleyman's original sound-recording authorship in the standalone beat and identifies LAA as claimant. Consistent with the registration, Plaintiffs do not claim the finished commercial master of "New Opp" or any preexisting material excluded from the registration. LAA's claim is to Souleyman's original beat — the very material Disney synchronized into its videos.

20. **"Gang Gang."** LAA owns its interest in the musical work "Gang Gang," including the original music and arrangement by Trayvon Jackson, and is the registered claimant under Registration No. PA 2-604-411.

21. **"Take It Off (Lights Off)."** Mr. Hiller is the registered claimant, by written agreement, of the sound recording "Take it Off 'Lights Off' Beat," authored by Trayvon Jackson, under Registration No. SR 1-075-539, effective April 14, 2026.

22. Each certificate is *prima facie* evidence of the validity of the copyright and the facts stated in it. 17 U.S.C. § 410(c). Each Work is original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

23. Under 17 U.S.C. § 106, Plaintiffs hold the exclusive rights to reproduce the Works, prepare derivative works, distribute them, and perform and display them

publicly — including the exclusive right to authorize synchronization of the Works with audiovisual content. Disney never obtained that authorization from Plaintiffs.

24. Two of the Works are sound recordings. In this Circuit, the owner of a sound recording does not have to prove that a defendant took a "substantial" part of it: any unlicensed copying of a sound recording infringes. *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 801 (6th Cir. 2005). The rule is simple: "Get a license or do not sample." *Id.* Disney did neither. It did not take a fragment. It used the beats as the soundtrack.

**THE PLATFORMS' MUSIC LICENSES DO NOT COVER DISNEY'S ADVERTISING**

25. Disney cannot hide behind TikTok or Instagram. Upon information and belief, the music licenses those platforms hold cover personal, non-commercial use by ordinary users. They are not synchronization licenses for corporate advertising.

26. Upon information and belief, both platforms restrict business and brand accounts to pre-cleared commercial music libraries — on TikTok, the Commercial Music Library — and require brands to obtain their own licenses for any other music. Upon information and belief, none of the Works is in any such library.

27. Federal courts have already rejected the "TikTok licensed it" defense. When the energy-drink company Bang Energy argued that TikTok's music license covered its promotional videos, the court held that the rights holders never

authorized TikTok to let businesses use their music for commercial purposes, and granted summary judgment of direct infringement. *UMG Recordings, Inc. v. Vital Pharms., Inc.*, No. 21-cv-60914, 2022 WL 2670339 (S.D. Fla. July 11, 2022). Weeks later, in a parallel case brought by Sony Music over Bang's TikTok and Instagram marketing videos, the same court held Bang liable for infringing hundreds of Sony's sound recordings used in promotional social-media videos posted by Bang and by the influencers it engaged. *Sony Music Entm't v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858 (S.D. Fla. Sept. 14, 2022).

28. The same is true when a brand pays or rewards a creator to post for it. A creator who promotes a brand in exchange for money, products, or experiences is making commercial use of the music on that brand's behalf. Federal law treats that post as the brand's own advertising: the Federal Trade Commission's Endorsement Guides require disclosure of any "material connection" between a creator and a brand — including free products and experiences — precisely because the post is the advertiser's message. *See* 16 C.F.R. §§ 255.0, 255.5. The platform's personal-use license does not stretch to cover it.

29. Disney, which runs some of the most sophisticated social-media and influencer-marketing operations in the world, knows all of this.

## DISNEY'S INFRINGING USES

30. Disney used the Works in at least seven promotional videos. Plaintiffs licensed none of them. Each is a separate act of infringement:

| Use | Disney Business | Work | Video | Posted |
|---|---|---|---|---|
| 1 | ESPN | New Opp | ESPN-branded short-form video, under 25 seconds | Before Aug. 2026 |
| 2 | ESPN | New Opp | Second ESPN-branded short-form video, under 25 seconds | Before Aug. 2026 |
| 3 | ESPN | New Opp (via "Pink Dreads") | tiktok.com/@espn/video/7450159806544940318 | Dec. 19, 2024 |
| 4 | Hulu | Gang Gang | tiktok.com/@janellejamescomedy/video/7567251483427736846 | Oct. 31, 2025 |
| 5 | Disney Parks | Take It Off (Lights Off) | tiktok.com/@mukendijosh/video/7626173799150439710 | Apr. 8, 2026 |
| 6 | Disney Parks | Take It Off (Lights Off) | tiktok.com/@raisingcultures/video/7642049527075065118 | May 20, 2026 |
| 7 | FX | Take It Off (Lights Off) | Instagram post by @jazmine promoting *The Drop* | Before Oct. 9, 2026 |

### A. ESPN (Uses 1–3)

31. Disney, through ESPN, published two short-form promotional videos on ESPN's official social-media accounts, each set to Souleyman's "New Opp" beat

(Uses 1–2). The beat is not background noise in these videos. It is the soundtrack. Each video promotes Disney's ESPN brand and content to an audience of millions.

32. Disney's counsel has told Plaintiffs that a third-party "Dutch company" posted those two videos and has agreed to indemnify ESPN. That admission sinks Disney's defense rather than supporting it. A company does not negotiate an indemnity for content that belongs to someone else; it negotiates an indemnity for content it commissioned and expects to be sued over. Disney has never named that company. Whatever Disney arranged with its vendor, the videos ran under ESPN's name, on ESPN's accounts, for Disney's benefit. An indemnity is not a license, and a vendor Disney hired is Disney's agent.

33. Disney also published, on ESPN's own @espn TikTok account, a video set to the song "Pink Dreads," which incorporates the underlying production of the "New Opp" beat (Use 3). No vendor stands between Disney and that post.

**B. Hulu (Use 4)**

34. On October 31, 2025, *Abbott Elementary* cast member Janelle James posted a TikTok promoting the show on Hulu and directing viewers to @Hulu, set to "Gang Gang" (Use 4).

35. *Abbott Elementary* streams on Hulu. Ms. James is one of the show's stars. The video exists for one reason: to drive viewers to Disney's Hulu service to

watch Disney's show. It is a Hulu advertisement starring Hulu talent, and its soundtrack is LAA's music.

36. The video was a hit. As of October 3, 2026, it had about 481,700 likes, 1,259 comments, 13,800 saves, and 17,500 shares — engagement driven to Disney's Hulu programming on the back of LAA's music. It stayed up for nearly a year, generating that engagement for Disney the entire time.

37. Upon information and belief, Disney, through Hulu and its publicity and marketing teams, commissioned, coordinated, approved, or promoted the video as part of its marketing for *Abbott Elementary*, and derived a direct financial benefit from it. Studios routinely coordinate cast social-media promotion of their shows, and Disney does so for its programming.

38. Plaintiffs reported the Hulu use to Hulu Legal and to Disney's legal department on October 3, 2026. Disney acknowledged receipt the same day. It never produced a license. The video came down — confirming that Disney had the power to remove it all along.

**C. Disney Parks (Uses 5–6)**

39. Two TikTok creators posted videos set to "Take It Off (Lights Off)" that tag @DisneyParks, feature Disney's Animal Kingdom, and carry the hashtag #disneycreatorcelebration (Uses 5–6).

40. Disney has admitted in writing that both videos were made through Disney's "Non-Obligated Influencers" program, and that both creators received Disney products, services, or experiences in connection with them.

41. That admission is dispositive of Disney's involvement. Disney recruited these creators, rewarded them with Disney perks, and reaped the marketing they produced. Calling the program "non-obligated" does not change what it is: Disney-funded promotion of Disney's parks, which federal law treats as Disney's own advertising. *See* 16 C.F.R. § 255.5. Upon information and belief, Disney sets content guidelines for program participants, holds approval or removal rights over their posts, and reposts and amplifies their content.

42. That is exactly the conduct for which a brand was held vicariously liable in *Sony v. Vital Pharmaceuticals*. There, the court granted summary judgment against Bang Energy for its influencers' videos because Bang engaged the influencers, compensated them, supplied them with its products, and helped shape their content. *Sony*, 2022 WL 4771858. Disney has admitted the core of that same relationship in writing: it ran the program, chose the creators, and gave them Disney products, services, and experiences.

**D. FX (Use 7)**

43. An Instagram post by @jazmine promotes Disney's FX series *The Drop*, expressly references @TheDropFX and its fourth episode, and is set to audio identified on the platform as "Take It Off (Lights Off)" (Use 7).

44. Upon information and belief, Disney, through FX or its agents, commissioned, paid for, approved, or amplified the post to promote *The Drop*, and received the promotional benefit of it.

## NOTICE AND WILLFULNESS

45. Plaintiffs gave Disney written notice of every use, identifying the Works, the videos, and Plaintiffs' rights:

| Date | Notice |
|---|---|
| Aug. 2026 | ESPN uses (Uses 1–2) first reported to ESPN |
| Aug. 27, 2026 | Disney Parks uses first reported to Disney |
| Sept. 5, 2026 | Souleyman's sworn declaration, assignment, and ownership documents sent to Disney's legal department |
| Sept. 25, 2026 | Disney Parks uses (Uses 5–6) and Registration No. SR 1-075-539 sent to Disney's legal department |
| Sept. 28, 2026 | ESPN "Pink Dreads" use (Use 3) reported to Disney's legal department |
| Oct. 3, 2026 | Hulu use (Use 4) reported to Hulu Legal and Disney's legal department; Disney acknowledged receipt the same day |
| Oct. 9, 2026 | FX use (Use 7) reported to Disney's legal department |

46. With each notice, Plaintiffs demanded that Disney preserve the videos, source files, analytics, creator agreements and briefs, licensing and clearance

records, and related communications. Disney has been under a duty to preserve that evidence since at least August 2026, and Plaintiffs will seek sanctions for any loss of it.

47. Disney has not produced a single license for a single use. Disney has not identified the company it says posted ESPN's videos. A company with a license produces it. A company without one stalls.

48. Instead, after Plaintiffs' notices, all seven videos came down — including the five that Disney attributes to creators and vendors. Upon information and belief, those third-party posts were removed at Disney's direction. That confirms what Disney knew all along: the videos used music it had no right to use, and Disney had the right and ability to control them.

49. Infringement is willful when the defendant knows its conduct is infringing or acts in reckless disregard of the copyright owner's rights, and continuing to exploit a work after receiving notice is classic evidence of willfulness. *See Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 (6th Cir. 2007). Disney left the videos up for weeks after Plaintiffs' notices while its lawyers "reviewed" them.

50. Disney is among the most sophisticated licensors and licensees of music in the world. It knows that putting a song in commercial promotional content requires a synchronization license. It used Plaintiffs' Works anyway, reaped the

promotional benefit for months, and kept reaping it after notice. Its infringement was willful or, at a minimum, in reckless disregard of Plaintiffs' rights.

51. No fair-use defense is available. Disney used Plaintiffs' music for the most commercial purpose there is — selling its own products — and used it for the same purpose the music was made for: to be heard. Courts have rejected fair use for exactly this conduct, clips of music placed in brand social-media videos to promote a commercial product. *See Sony*, 2022 WL 4771858.

## PLAINTIFFS' INJURY

52. A synchronization license has a market value. A willing buyer and a willing seller would have agreed to a fee for each use of each Work in a national brand's promotional campaign. Disney took that license without paying, depriving Plaintiffs of the fee for every use. The fair market value of the license a defendant should have bought is a proper measure of actual damages. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 165–72 (2d Cir. 2001).

53. Disney also profited. Each video was designed to, and upon information and belief did, drive viewership, subscriptions, ticket and vacation sales, advertising revenue, and brand engagement. Under 17 U.S.C. § 504(b), Plaintiffs need only present proof of Disney's gross revenue reasonably related to the infringement; the burden then shifts to Disney to prove its deductible expenses and the portion of its profits attributable to factors other than Plaintiffs' Works.

54. Unlicensed use by one of the largest media companies in the world also damages the value of the Works themselves, signaling to every other brand that they can be used without paying.

**COUNT I**

**Direct Copyright Infringement, 17 U.S.C. § 501 — "New Opp (beat)"**

(Plaintiff LAA against all Defendants)

55. LAA repeats paragraphs 1 through 54.

56. LAA owns a valid, registered copyright in "New Opp (beat)," Reg. No. SR 1-081-666.

57. Without authorization, Disney — directly, through its ESPN business, and through agents acting at its direction and for its benefit, including Does 1–10 — reproduced, synchronized, publicly displayed, publicly performed, and distributed "New Opp (beat)" in Uses 1–3.

58. Each use infringed LAA's exclusive rights under 17 U.S.C. § 106 and caused LAA damage.

**COUNT II**

**Direct Copyright Infringement, 17 U.S.C. § 501 — "Gang Gang"**

(Plaintiff LAA against all Defendants)

59. LAA repeats paragraphs 1 through 54.

60. LAA owns a valid, registered copyright in “Gang Gang,” Reg. No. PA 2-604-411.

61. Without authorization, Disney — directly, through its Hulu business, and through agents acting at its direction and for its benefit, including Does 1–10 — reproduced, synchronized, publicly displayed, publicly performed, and distributed “Gang Gang” in Use 4.

62. That use infringed LAA’s exclusive rights under 17 U.S.C. § 106 and caused LAA damage.

## COUNT III

### Direct Copyright Infringement, 17 U.S.C. § 501 — “Take it Off ‘Lights Off’ Beat”

(Plaintiff Hiller against all Defendants)

63. Mr. Hiller repeats paragraphs 1 through 54.

64. Mr. Hiller owns a valid, registered copyright in “Take it Off ‘Lights Off’ Beat,” Reg. No. SR 1-075-539.

65. Without authorization, Disney — directly, through its Disney Parks and FX businesses, and through agents acting at its direction and for its benefit, including Does 1–10 — reproduced, synchronized, publicly displayed, publicly performed, and distributed “Take it Off ‘Lights Off’ Beat” in Uses 5–7.

66. Each use infringed Mr. Hiller's exclusive rights under 17 U.S.C. § 106 and caused him damage.

**COUNT IV**

**Contributory Copyright Infringement**

(All Plaintiffs against all Defendants)

67. Plaintiffs repeat paragraphs 1 through 66.

68. To the extent any use was posted by a creator, vendor, agency, subsidiary, or other third party, that party directly infringed the Works.

69. Disney knew or had reason to know of the infringing activity carried out under its brands and for its benefit, and at the latest knew of every use once it received Plaintiffs' notices.

70. Disney materially contributed to and induced that infringement by soliciting, commissioning, compensating, briefing, approving, tagging, reposting, or amplifying the videos — including by rewarding creators with Disney products, services, and experiences through its influencer program, and by hiring the vendor it says posted ESPN's videos. One who intentionally induces or encourages direct infringement is liable for it. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

71. Disney received the full promotional benefit of the videos before they were removed.

**COUNT V**

**Vicarious Copyright Infringement**

(All Plaintiffs against all Defendants)

72. Plaintiffs repeat paragraphs 1 through 71.

73. A defendant is vicariously liable for infringement when it has the right and ability to supervise the infringing conduct and an obvious and direct financial interest in it. *Gordon v. Nextel Commc'ns*, 345 F.3d 922, 925 (6th Cir. 2003); *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). The doctrine is an outgrowth of respondeat superior. *Gordon*, 345 F.3d at 925 (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996)). Knowledge is not required. A brand that engages, compensates, supplies, and shapes the content of social-media creators is vicariously liable for the music in their promotional videos. *Sony*, 2022 WL 4771858.

74. Disney had the right and ability to supervise the infringing conduct carried out for its benefit, including through its ownership and control of its ESPN, Hulu, Disney Parks, and FX businesses, and through contracts, indemnities, influencer-program terms, content guidelines, and approval and takedown rights. Disney proved that ability when every video came down after Plaintiffs' notices.

75. Disney received a direct financial benefit from the infringement: promotion of its programming, streaming service, parks, and brands, and audience engagement drawn by Plaintiffs' music.

76. Disney had the right and ability to stop the infringement, chose not to, and took the financial benefit of it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask the Court to enter judgment in their favor and against Defendants, jointly and severally, and to award:

A. A declaration that Defendants infringed Plaintiffs' copyrights in each of the Works, and that the infringement was willful;

B. A permanent injunction under 17 U.S.C. § 502 barring Defendants and all acting in concert with them from any further unlicensed use of the Works, including reposting any of the infringing videos;

C. An order under 17 U.S.C. § 503 impounding all copies of the infringing videos and their source files, and requiring Defendants to preserve all related records;

D. Plaintiffs' actual damages, including the fair market license fee for every use, and all of Defendants' profits attributable to the infringement under 17 U.S.C. § 504(b), in an amount to be proven at trial;

E. An accounting of all revenue and profits Defendants derived from the infringing videos;

F. In the alternative, at Plaintiffs' election and to the full extent available, statutory damages under 17 U.S.C. § 504(c), enhanced to up to $150,000 per work for willful infringement;

G. Costs and, to the full extent available, reasonable attorneys' fees under 17 U.S.C. § 505;

H. Pre- and post-judgment interest; and

I. Such other relief as the Court finds just.

## JURY DEMAND

Under Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 19, 2026

Respectfully submitted,

/s/ Hal D. Burke
Hal D. Burke (P69068)
SCHEER, GREEN AND BURKE LPA
P.O. Box 1335
Toledo, Ohio 43603
Tel.: (419) 243-2283
Fax: (419) 463-9139
Email: hburke@sgblegal.com

*Counsel for Plaintiffs Music L.A.A., Inc., d/b/a LAA Music, and Zac Hiller*